People of the State of NEW YORK, by Eric T. SCHNEIDERMAN, Attorney General of the State of New York, Plaintiff,

v.

Joseph KRAEGER; Victoria Kraeger; Sheri Kraeger; and Vicki Jo Syversen, Defendants.

No. 5:01–CV–249.

United States District Court, N.D. New York.

Sept. 23, 2013.

Kristen Clarke, Esq., Monica V. Iyer, Esq., Ass't Attorneys General, Hon. Eric T. Schneiderman, Attorney General for the State of New York, New York, NY, for Plaintiff.

Christopher A. Ferrara, Esq., American Catholic Lawyers Association, Inc., Fairfield, NJ, John J. Broderick, Esq., Office of John J. Broderick, Syossett, NY, for Kraeger Defendants.

Vicki Jo Syversen, Port Leyden, NY, Defendant Pro Se.

## MEMORANDUM–DECISION and ORDER

DAVID N. HURD, District Judge.

### I. INTRODUCTION

Plaintiff, the People of the State of New York, by Eric. T. Schneiderman, Attorney General of the State of New York, was granted a permanent injunction in 2001 enjoining prolife activist defendants Joseph Kraeger, Victoria Kraeger, Sheri Kraeger, and Vicki Jo Syversen from, inter alia, obstructing access to any facility providing reproductive health care services in the Northern District of New York. Plaintiff was granted a modification of the permanent injunction on December 18, 2012.

Plaintiff now moves to again modify the permanent injunction by expanding the buffer zone at the Planned Parenthood Mohawk Hudson Clinic located at 1424 Genesee Street, Utica, New York (the "Utica clinic"); to hold Joseph and Victoria Kraeger (collectively "the Kraegers") in civil contempt of the permanent injunction; and to establish a buffer zone at the Planned Parenthood North Country facility at 7398 Route 26, Lowville, New York (the "Lowville clinic"). Defendants opposed, plaintiff replied, and defendants filed a sur-reply with permission.

Defendants then filed a motion to preclude plaintiff from asserting any claims against them for civil contempt under paragraph 1(b) of the modified permanent injunction, to preclude plaintiff from asserting any claims against them for criminal contempt, and to dismiss all of plaintiff's contempt claims before the hearing scheduled for August 28, 2013. Plaintiff opposed.

Oral argument was heard on both motions on August 28, 2013, in Utica, New York. Decision was reserved.

Finally, following oral argument, the parties filed additional submissions with the court. Plaintiff filed the DVD footage relied upon in its initial motion which was absent from the record, along with more detailed maps of the proposed buffer zones at the Utica and Lowville clinics as requested by the undersigned. Defendants responded to plaintiff's video and map submissions with written submissions along with additional DVD footage. Lastly, plaintiff submitted a reply to defendants' response.

## II. *BACKGROUND*

It is assumed the parties are familiar with the underlying facts as detailed in the initial permanent injunction issued on August 24, 2001,[1] *People of State of New York ex rel. Spitzer v. Kraeger,* 160 F.Supp.2d 360 (N.D.N.Y.2001), and the modification granted on December 18, 2012, *People of State of New York ex rel. Schneiderman v. Kraeger,* 914 F.Supp.2d 223 (N.D.N.Y. 2012).

In short, plaintiff brought this case to enjoin defendants' illegal obstruction and threatening protest activities at reproductive health care facilities in the Northern District of New York. Following a bench trial, it was found that defendants engaged in acts of force, threats of force, and physical obstruction at Planned Parenthood facilities in the Northern District of New

York. To ensure unrestricted access to reproductive health care facilities for patients and staff, a permanent injunction was issued in 2001, inter alia, barring defendants from trespassing on, standing, sitting, or lying or being present in or on, blocking, impeding, or obstructing ingress or egress from, any facility providing reproductive health care services in the Northern District of New York, including each facility's parking lot, driveway, driveway entrance, walkway entrance, common stairwell, or lobby area. The injunction also created a buffer zone in front of the Utica clinic and enjoined defendants from being present in the buffer zone.[2]

In 2012, the Utica clinic purchased additional land adjacent to its then-current location and expanded its facilities. The new property line extends 24 feet beyond the original buffer zone. The construction led to the creation of a new driveway, north of the clinic's original driveway, with entrances on both Genesee and Francis Streets. *See Schneiderman,* 914 F.Supp.2d at 225–26 (describing driveways). Plaintiff moved for expansion of the buffer zone to account for the construction and resulting new driveways and entrances to the Utica clinic. Plaintiff's request was partially granted. The buffer zone on Genesee Street was expanded to reflect the changes to the Utica clinic's front entrance and driveways.[3] Plaintiff's

---

1. Plaintiff was granted a permanent injunction on August 24, 2001. ECF Nos. 39, 40. Following defendants' motion to modify, vacate, and/or reconsider the Memorandum–Decision and Order, Permanent Injunction Order and Judgment issued on August 24, 2001, an Order was issued on December 27, 2001, modifying the August 24, 2001, Permanent Injunction Order and Judgment. ECF Nos. 67, 68. The modifications made by the December 27, 2001, Order are not relevant to the instant matter.

2. The buffer zone was created for the Utica clinic only, despite plaintiff's attempt in 2001 to also create a buffer zone at the Lowville clinic.

3. The parameters of the expanded buffer zone are: From a point on the west side of the sidewalk perpendicular with the fire hydrant next to the curb on Genesee Street (point 1); proceeding in an easterly direction through said fire hydrant to a point ten feet east of the west curb of Genesee Street (point 2); proceeding in a southerly direction parallel to the west curb to a point perpendicular with utility

request to create a buffer zone on Francis Street, behind the Utica clinic, was denied because plaintiff failed to submit details of a proposed buffer zone or include any readily identifiable, public landmarks on Francis Street that would provide clarity to defendants about the limits imposed on their activities at the Utica clinic. Plaintiff was invited to resubmit its motion at a later date with a more detailed demonstration of the factual circumstances on Francis Street.

Construction is now complete at the Utica clinic and both driveways on Francis Street, in the back of the clinic, are now in use. Francis Street is now a main access point to the clinic and because there is less visibility on Genesee Street when exiting the parking lot, patients and staff are encouraged to use the Francis Street driveways whenever they leave the clinic. Plaintiff asserts that the Kraegers have continued to carry out protest activities on the Francis Street side of the Utica clinic, particularly since there is currently no buffer zone there. Those activities include parking their large vehicle in a manner that obstructed the Francis Street driveways and walking slowly back and forth across the driveways and moving into the path of a car seeking to exit the parking lot.

## III.  DISCUSSION

### A.  *Plaintiff's Motion,* ECF No. 91

Plaintiff moves to expand the existing buffer zone at the Utica clinic, hold the Kraegers in contempt based on their conduct at the Lowville clinic, and establish a buffer zone at the Lowville clinic.

### 1.  *Utica Clinic*

"Federal Rule of Civil Procedure 60(b)(5) permits a party to obtain relief from a judgment or order if, among other things, 'applying [the judgment or order] prospectively is no longer equitable.'" *Horne v. Flores,* 557 U.S. 433, 447, 129 S.Ct. 2579, 2593, 174 L.Ed.2d 406 (2009) (quoting Fed.R.Civ.P. 60(b)(5)). Under Rule 60(b)(5), a party may request modification of a judgment or order if " 'a significant change either in factual conditions or in law' renders continued enforcement 'detrimental to the public interest.' " *Id.* (quoting *Rufo v. Inmates of Suffolk Cnty. Jail,* 502 U.S. 367, 384, 112 S.Ct. 748, 760, 116 L.Ed.2d 867 (1992)); *Davis v. N.Y.C. Hous. Auth.,* 278 F.3d 64, 88 (2d Cir.2002) ("It is . . . well established that a district court has the power, in the exercise of its discretion, to modify its past injunctive decrees in order to accommodate changed circumstances."). "The source of the power to modify is of course the fact that an injunction often requires continuing supervision by the issuing court and always a continuing willingness to apply its powers and processes on behalf of the party who obtained that equitable relief." *System Fed'n No. 91 v. Wright,* 364 U.S. 642, 647, 81 S.Ct. 368, 371, 5 L.Ed.2d 349 (1961); *Benjamin v. Jacobson,* 172 F.3d 144, 161–62 (2d Cir.1999). The party seeking the modification carries the burden of demonstrating the significant change in circumstances. *Rufo,* 502 U.S. at 383, 112 S.Ct. at 760. Finally, because defendants' First Amendment rights are implicated, any modification to the permanent injunction must still be (1) content neutral and (2) "burden no more speech than necessary to serve a significant government interest." *Madsen v. Women's Health Ctr., Inc.,* 512

pole number 90 (point 3); and proceeding in a westerly direction through said utility pole to a point on the west side of the sidewalk

(point 4). *Schneiderman,* 914 F.Supp.2d at 229.

U.S. 753, 765, 114 S.Ct. 2516, 2525, 129 L.Ed.2d 593 (1994).

■ Plaintiff contends that under the current buffer zone at the Utica clinic, which only protects Genesee Street, defendants are permitted to access clinic patients and staff and obstruct access to the entrance of the clinic by blocking the walkway and driveway entrances on Francis Street. They argue that increased patient and staff usage of the Francis Street driveways creates a clear need for a expansion of the buffer zone to effectuate the buffer zone's original goals and ensure the continuing effectiveness of the permanent injunction. Accordingly, plaintiff seeks the creation of a buffer zone on Francis Street. It proposes the Francis Street buffer zone extend from a telephone pole located just south of the southern driveway to a telephone pole located just north of the northern driveway. The proposed buffer zone is illustrated on two maps submitted by plaintiff. Iyer Ltr., Exs. A1 & A2, ECF No. 104.

The Kraegers contend the proposed buffer zone would impose burdensome new restrictions on their First Amendment liberty. Specifically, they assert that the proposed buffer zone would span all three of the clinic's new driveways and forbid pro-life advocacy on the entire public sidewalk behind the clinic. They explain the Francis Street sidewalk is already separated from the clinic by a chain link fence and approximately 200 feet of private property. The proposed buffer zone would leave them nowhere near the clinic building which is the object of their advocacy. They argue there has been no change in circumstances which would warrant the imposition of a buffer zone on Francis Street. The Kraegers contend that the Attorney General's two allegations regarding their allegedly illegal conduct on Francis Street are trivial and the mere construction of new driveways does not justify a restriction on First Amendment rights. Moreover, even if justified, they argue the proposed buffer zone is not narrowly tailored and burdens more speech than necessary.

Plaintiff has demonstrated that the Utica clinic's land acquisition and subsequent reconfiguration of access to the clinic constitute a significant change in circumstances warranting a modification of the permanent injunction. Accordingly, the buffer zone will be expanded to account for the change in driveways on Francis Street. The Francis Street buffer zone will extend from a telephone pole located just south of the southern driveway on Francis Street (point 1) to a telephone pole located just north of the northern driveway on Francis Street (point 2). These telephone poles are readily identifiable, public landmarks that will provide clarity to defendants about the limits imposed on their activities at the Utica clinic. These limited changes to the buffer zone will ensure that the clinic's two new driveway entrances on Francis Street, which are now regularly used by persons accessing the clinic, fall within the scope of the court's previous Orders. The remaining parameters of the buffer zone will remain as provided for in the December 18, 2012, Memorandum–Decision and Order.

This modification will ensure the continuing effectiveness of the permanent injunction while preserving defendants' ability to exercise their free speech rights in a reasonable manner. The modification is consistent with the goal of the permanent injunction, which was to protect patients and staff from illegal activity by the defendants at the key points of pedestrian and vehicular access to the clinic, and is tailored to burden no more speech than is necessary to effectuate that goal. The new buffer zone is indicated on Exhibits

A1 (map) and A2 (map to scale), attached to this Memorandum–Decision and Order.

### 2. *Lowville Clinic*

■ Plaintiff also moves to hold the Kraegers in contempt of the permanent injunction based on their conduct at the Lowville clinic and seeks to establish a buffer zone at the Lowville clinic.

### a. *Civil Contempt*

■ A party may be held in civil contempt for failure to comply with a court order only if: "(1) the order ... is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.,* 369 F.3d 645, 655 (2d Cir.2004) (internal quotation marks omitted). The permanent injunction bars defendants from trespassing on, standing, sitting, or lying or being present in or on, blocking, impeding, or obstructing ingress or egress from, any facility providing reproductive health care services in the Northern District of New York, including each facility's parking lot, driveway, driveway entrance, walkway entrance, common stairwell, or lobby area.

The evidence of defendants' noncompliance with the permanent injunction is less than clear and convincing. It is based entirely upon plaintiff's affidavits, which include allegations from Planned Parenthood administrators but none from the victims of the Kraeger's alleged harassment. Plaintiff also relies heavily on video footage which depicts defendants at the Lowville clinic only on April 20, 2012. Oleck Decl., Ex. G (not received until Aug. 30, 2013) ("video footage"). According to plaintiff, on that date, the Kraegers stood in the driveway of the clinic and blocked a patient and her companion from leaving the clinic parking lot in her vehicle and engaged her and her companion in conversation despite their repeated requests that the Kraegers move away from the vehicle and allow them to exit. Plaintiff further contends that Lowville clinic staff had to call the police in response to the Kraeger's activities on that date. Defendants dispute plaintiff's characterization of the events and contend that the patient drove her vehicle directly at Mrs. Kraeger, and that the patient's male companion provoked and then prolonged the verbal exchange with the Kraegers during which time the driver never demanded that the Kraegers move, and during which time the vehicle was free to drive away.

This is the only video footage provided by plaintiff of the Kraegers' alleged violation of the permanent injunction at the Lowville clinic. Not only is the audio difficult to hear, but the video is subject to competing interpretations. The Lowville clinic parking lot has two access points: if you face Route 26 with the clinic building behind you, there is one driveway apron to the left and one to the right (toward Lowville); the driveway aprons are separated by a grassy median. *See* Exhibit A3 (still shot from video footage). The video footage submitted by plaintiff begins with two individuals exiting the clinic. The Kraegers are seen protesting; Mrs. Kraeger yells to the male, "If you cared about her you wouldn't bring her to a place that kills babies." Mrs. Kraeger can be seen walking and holding a sign in the left driveway apron. The male shouts "Get a job!" at the Kraegers as the two get into their vehicle. The female driver then backs her vehicle out of the parking space, and drives directly toward Mrs. Kraeger who is still in the left driveway apron (and standing by the edge of the grassy median), even though the far wider right driveway apron is completely open and in their

direction of travel. Meanwhile, another vehicle enters using the right driveway apron, which again, is completely unobstructed. The female driver, while still in her vehicle, tells Mrs. Kraeger to get out of the way to which Mrs. Kraeger responds that she is not in the way. The male passenger then gets out of the vehicle, leans against it, and proceeds to have a conversation with the Kraegers about birth control and Planned Parenthood. At no point during this approximately seven minute exchange does the male passenger get back in the vehicle nor does the female driver attempt to move her vehicle or exit the parking lot. Law enforcement officers then arrive on the scene. The male passenger gets back in the vehicle and the vehicle drives away—to the right toward Lowville—but exits from the left driveway apron. Finally, the Lewis County Sheriff's Office, which responded to the scene, later reviewed the video of the encounter and concluded—twice—that no action was warranted.

While the Kraeger's protest activities on the date in question no doubt annoyed or even aggravated the two individuals in the video, it cannot be found that the Kraegers violated the permanent injunction based on the video footage. Instead, it appears that the male in the video engaged the Kraegers in conversation. Regardless of his motive, he and his companion were free to leave at any time as the Kraegers did not block, impede, or obstruct ingress or egress from the clinic's parking lot, driveway, or driveway entrance. This incident is the only of its kind presented on video by plaintiff depicting the Kraeger's alleged violation of the permanent injunction in the last twelve years since the injunction was put in place. The video does not provide the clear and convincing evidence needed to find the Kraegers in contempt of the permanent injunction.

Accordingly, plaintiff's motion to find the Kraegers in contempt of the permanent injunction or alternatively for a hearing to determine the same will be denied as plaintiff cannot sustain its burden.

#### b. *Buffer Zone*

■ With respect to the creation of a buffer zone at the Lowville clinic, the First Amendment requires that " 'the challenged provisions of the injunction burden no more speech than necessary to serve a significant government interest.' " *Schenck v. Pro–Choice Network of Western N.Y.*, 519 U.S. 357, 372, 117 S.Ct. 855, 864, 137 L.Ed.2d 1 (1997) (quoting *Madsen*, 512 U.S. at 765, 114 S.Ct. at 2525). The facts surrounding the Lowville clinic were litigated during the 2001 bench trial in this matter. It was found that plaintiff failed to prove any violations at the Lowville clinic and a buffer zone was not warranted at that time. There is even less evidence in the record now pertaining to defendants' conduct and alleged violations of the permanent injunction at the Lowville clinic. Moreover, as explained above, plaintiff cannot establish that the Kraegers are in contempt of the permanent injunction and thus cannot rely on a contempt finding as a basis for establishing a buffer zone at the Lowville clinic.

Accordingly, plaintiff's request for a hearing, or alternatively a finding that a buffer zone at the Lowville clinic is warranted will be denied.

#### B. *Defendants' Motion,* ECF No. 102

As previously mentioned, following the complete briefing of plaintiff's motion to modify the permanent injunction and to find the Kraegers in contempt, defendants filed a motion to preclude plaintiff from asserting civil and criminal contempt claims and to dismiss the already filed contempt claims. Because the issue of

contempt has already been addressed above, defendants' motion will be denied as moot.

## IV. CONCLUSION

Plaintiff has demonstrated that the Utica clinic's land acquisition and subsequent reconfiguration of access to the clinic constitute a significant change in circumstances warranting a modification of the permanent injunction. Plaintiff will be granted an expansion of the buffer zone at the Utica clinic to include Francis Street, as reflected in Exhibits A1 and A2 attached to this Memorandum–Decision and Order. This modification is consistent with the goal of the permanent injunction and burdens no more speech than necessary.

With regard to the Lowville clinic, plaintiff has not presented sufficient evidence to warrant a hearing to determine whether the Kraegers have violated the terms of the permanent injunction nor whether a buffer zone is necessary. Nor can plaintiff prevail on the merits. Accordingly, plaintiff's motion to find the Kraegers in contempt and to establish a buffer zone at the Lowville clinic will be denied.

Therefore, it is

ORDERED that

1. Plaintiff's motion for an expansion of the permanent injunction is GRANTED as it relates to Francis Street at the Utica clinic;

2. The parameters of the buffer zone established by the August 24, 2001 permanent injunction and as modified by the December 18, 2012 permanent injunction are expanded effective immediately to now include, with respect to the back of the Utica clinic:

From a telephone pole located just south of the southern driveway on Francis Street (point 1) to a telephone pole located just north of the northern driveway on Francis Street (point 2) as set forth in Exhibits A1 and A2;

3. Plaintiff's request for a hearing is DENIED;

4. Plaintiff's motion to find Joseph and Victoria Kraeger in civil contempt of the permanent injunction and to create a buffer zone at the Planned Parenthood North Country New York facility in Lowville, New York is DENIED; and

5. Defendants' motion to preclude is DENIED as moot.

IT IS SO ORDERED.

### EXHIBIT A1